**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BETHANY ZIMMERMAN,**<br><br>              **Plaintiff,**<br><br>    v.<br><br>**THE HOME DEPOT, INC.,** *et al.*,<br><br>              **Defendants.** | Civil Action No.: 24-4353 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

      Before the Court is defendant The Home Depot Inc.'s ("Defendant") motion to dismiss (D.E. Nos. 6 & 7 ("Motion"))[1] plaintiff Bethany Zimmerman's ("Plaintiff") complaint (D.E. No. 1-2 ("Complaint" or "Compl.")). Plaintiff filed an opposition (D.E. No. 8 ("Opp. Br.")), and Defendant filed a reply (D.E. Nos. 10 & 11 ("Reply Br."))[2]. Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendant's Motion is **GRANTED**.

---

[1]     Docket Entry Number 6 is Defendant's Motion filed on April 18, 2024, which did not contain proper electronic signatures on the notice of motion and the moving brief; Docket Entry Number 7 is Defendant's notice of motion and moving brief in support of its Motion refiled on April 23, 2024, with the proper electronic signatures. Other than the signatures, these documents appear identical. (*Compare* D.E. Nos. 6, 6-1 & 6-2, *with* D.E. Nos. 7, 7-1 & 7-2). For ease of reference, the Court will refer to D.E. No. 7-2 when citing to "Mov. Br." herein.

[2]     Docket Entry Number 10 is Defendant's reply brief filed on May 13, 2024, which did not contain a proper electronic signature; Docket Entry Number 11 is Defendant's reply brief refiled on May 14, 2024, with the proper electronic signature. Other than the signature, these two documents appear identical. (*Compare* D.E. No. 10, *with* D.E. No. 11). For ease of reference, the Court will refer to D.E. No. 11 when citing to "Reply Br." herein.

I.  BACKGROUND

   A.  Factual Background[3]

Plaintiff is an individual who resides in Westfield, New Jersey. (Compl. at 1). Defendant is a corporation organized and existing under the laws of Delaware with its principal place of business in Atlanta, Georgia. (D.E. No. 1 at 2). Defendant owns a Home Depot store in Watchung, New Jersey (the "Store"). (Compl. at 1, ¶ 1[4]). Around 6:00 p.m. on July 18, 2022, Plaintiff was shopping at the Store and "reached for a single piece of metal pipe displayed on a shelf, and while doing so the pipe came apart into two pieces slicing and injuring [her] right hand and lower right arm in multiple places" (the "Incident"). (*Id.* at 1–2, ¶¶ 1–2). Plaintiff requested assistance from one of the Store's cashiers who helped bandage Plaintiff's hand and arm. (*Id.* at 2, ¶¶ 4–5). A Store manager then came over to take a statement from Plaintiff regarding the Incident. (*Id.* ¶ 5). Thereafter, Plaintiff went to the Summit Health Urgent Care facility in Westfield, New Jersey to get emergency medical care for her injuries. (*Id.* ¶ 6). As a result of her injuries, Plaintiff suffered pain and excessive bleeding. (*Id.* ¶ 3). Additionally, since the Incident, "Plaintiff has suffered constant tingling and a loss of sensation in her right hand and arm" that "interferes with and limits her ability to use her right hand and arm, e.g., difficulty writing." (*Id.* ¶ 7).

Plaintiff alleges Defendant "owned, assembled, displayed and/or offered for sale" in the Store the metal pipe "in such a careless and negligent manner as to cause an accident to occur that injured Plaintiff" and to cause Plaintiff to incur medical expenses for the injuries she sustained. (*Id.* at 3, ¶ 2 & 4, ¶ 2). Plaintiff also alleges that prior to the Incident, Defendant was aware "that

---

[3]  The factual background is taken from the allegations in the Complaint. For purposes of the instant Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[4]  Because the paragraphs in the Complaint are not consecutively numbered, the Court cites to both the page and paragraph numbers where necessary when citing to the Complaint herein.

the pipe at issue was in a compromised and dangerous condition." (*Id.* at 4, ¶ 5). According to Plaintiff, Defendant knew the pipe was in a "dangerous condition" but nevertheless "directed, authorized, encouraged, and permitted said pipe to be displayed and/or offered for sale," and in so doing, "knowingly, willfully and wantonly endangered the health and safety of all visitors and customers," including Plaintiff. (*Id.* ¶¶ 3–5).

### B. Procedural History

On January 22, 2024, Plaintiff initiated this action by filing the Complaint against Defendant and fictitious defendants "JOHN DOES 1-5" and "ABC CORPORATIONS 1-5" in the Superior Court of New Jersey, Law Division, Union County, No. UNN-L-000264-24 (the "State Court Action"), alleging what appear to be state law claims for negligence, willful and wanton misconduct, and a claim based on a theory of *respondeat superior*.[5] (*See generally* Compl.). On March 28, 2024, Defendant removed the State Court Action to this Court on the basis of diversity jurisdiction. (D.E. No. 1). In its notice of removal, Defendant states it was served on February 14, 2024, but represents it was not aware this action was removable until it received a demand from Plaintiff's counsel "in the amount of $100,000" on February 28, 2024. (*Id.* at 3). Accordingly, Defendant contends its removal is timely under 28 U.S.C. § 1446(b) because it removed the State Court Action to this Court within thirty days of learning that the value of this action was greater than $75,000, i.e., that this action was removable. (*Id.* at 3–4). Defendant also asserts diversity jurisdiction is proper because Plaintiff and Defendant are completely diverse, and

---

[5] Plaintiff lists four "Counts" in her Complaint but does not delineate what specific causes of action she is alleging in each count, nor does she assert under what law or laws she is bringing those claims. Therefore, the causes of action listed here are those that the Court construes based on a broad reading of the Complaint. To the extent Plaintiff intended to assert any other causes of action not listed herein, those causes of action are dismissed for failure to state a claim.

3

the amount in controversy exceeds $75,000.[6]  (*Id.* at 2).

On April 18, 2024, Defendant filed a motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Motion; Mov. Br.).  The Motion is fully briefed.  (*See* Mov. Br.; Opp. Br.; Reply Br.).

## II.   LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  However, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id*. at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)

---

[6]   Plaintiff does not dispute the timeliness of Defendant's removal, the asserted amount in controversy, or this Court's jurisdiction over this action.

4

(noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (alteration in original) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004))). Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

### III.  DISCUSSION

Defendant argues Plaintiff's Complaint should be dismissed because Plaintiff's common law negligence and willful-and-wanton claims therein are subsumed by the New Jersey Product Liability Act ("NJPLA") and Plaintiff fails to state a claim under the NJPLA. (Mov. Br. at 3). Specifically, Defendant contends that Plaintiff's Complaint only asserts common law claims for negligence and willful-and-wanton misconduct for alleged harm caused by a product—a metal pipe—but that the NJPLA provides the exclusive remedy for harm caused by a product, and Plaintiff's Complaint fails to state claim under the NJPLA. (*Id.* at 2). Thus, Defendant submits Plaintiff's Complaint must be dismissed for failure to state a claim. (*Id.* at 3).

In opposition, Plaintiff argues her claims do not arise under, and are not barred by, the NJPLA because she "was not using the pipe at issue for its intended purpose, and because [Defendant] is liable for negligence and the other asserted causes of action under the 'mode of operation' doctrine." (Opp. Br. at 1). Plaintiff further argues that even if her claims are subsumed under the NJPLA, Defendant would still be "liable thereunder for placing the pipe at issue 'in the

5

line of commerce' such that Plaintiff should be allowed to amend her Complaint [] to assert such a claim[.]" (*Id.*). Plaintiff clarifies that her claims do not stem from the pipe's malfunction, but rather stem from Defendant's "failure to ensure that [the pipe] was assembled and presented in the store for customers to examine and/or purchase in a manner that would not injure Plaintiff or other customers." (*Id.* at 2). Plaintiff contends that because she "was not using the pipe for any purpose, let alone its intended purpose, . . . the NJPLA does not apply[.]" (*Id.*).

In reply, Defendant maintains neither of Plaintiff's arguments in opposition save her Complaint from dismissal. (Reply Br. at 1). Defendant asserts (i) the fact that Plaintiff was not using the product for its intended purpose is legally irrelevant to NJPLA's application and further is not supported by any legal authority; and (ii) Plaintiff misapplies the mode-of-operation doctrine, which the Complaint's allegations do not support. (*Id.* at 1–4). Defendant reiterates that Plaintiff's Complaint should be dismissed. (*Id.* at 4). However, Defendant states that without waving any of its defenses, it does not object to the Court permitting Plaintiff to file an amended complaint. (*Id.* at 1–2).

### A. Subsumption Under the NJPLA

The Court first addresses whether the NJPLA subsumes Plaintiff's common law claims of negligence and willful-and-wanton conduct, before addressing the sufficiency of the Complaint's allegations for those claims.

The NJPLA provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to

    contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.  The NJPLA defines a "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." *Id.* § 2A:58C-1(b)(3). The NJPLA defines "harm" as including "(b) personal physical illness, injury or death"; "(c) pain and suffering, mental anguish or emotional harm"; and "(d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c)."  *Id.* § 2A:58C-1(b)(2).

  "In implementing the NJPLA, the Legislature intended 'to limit the expansion of products-liability law' and 'to limit the liability of manufacturers so as to balance[] the interests of the public and the individual with a view towards economic reality.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (alteration in original) (quoting *Zaza v. Marquess & Nell, Inc.*, 675 A.2d 620, 627 (N.J. 1996)).  "The New Jersey Supreme Court has explained that '[t]he language chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products.'" *Id.* (first alteration in original) (quoting *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007)).  The NJPLA's language represents "a clear legislative intent that . . . the [NJ]PLA is paramount when the underlying claim is one for harm caused by a product." *Sinclair v. Merck & Co.*, 948 A.2d 587, 596 (N.J. 2008).  "As explained by the Third Circuit, the NJPLA 'effectively creates an exclusive statutory cause of action for claims falling within its purview.'" *Greisberg v. Bos. Sci. Corp.*, No. 19-12646, 2020 WL 278648, at *4 (D.N.J. Jan. 17, 2020) (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991)).

  Recognizing the NJPLA's broad scope, "New Jersey federal and state courts have

consistently dismissed product liability-related claims based on common law theories when at the heart of those theories is the potential 'harm caused by a product.'" *Hindermyer*, 419 F. Supp. 3d at 818 (citing cases). "In addition, courts have found that the NJPLA subsumes common law . . . claims so long as the harm alleged was caused by a product." *Id.* at 819 (citing cases). However, "[a]lthough the NJPLA generally subsumes common law negligence claims alleging that a plaintiff suffered harm as a result of a defective product itself, the NJPLA does not subsume negligence claims where the alleged harm stems from the independent conduct of a defendant." *Guardavacarro v. Home Depot*, No. 16-8796, 2017 WL 3393812, at *7 (D.N.J. Aug. 8, 2017) (first citing *Universal Underwriters Ins. Grp. v. Pub. Serv. Elec. & Gas Co.*, 103 F. Supp. 2d 744, 748 (D.N.J. 2000) (finding that the plaintiff's negligence claim did not fall under the NJPLA, where "the claim asserted by the [p]laintiff is not related to a defect in the product (i.e. the electricity), but rather to the maintenance and oversight of PSE&G's emergency response service"); and then citing *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530 (D.N.J. 1999) (holding that a claim for negligent installation was not subsumed by the NJPLA, because it was grounded in the defendant's conduct, rather than harm caused by a defective product)).

"To determine whether the NJPLA subsumes a particular claim, the court must ascertain the type of harm that a plaintiff is alleging; namely, whether the harm involves property damage or bodily injury caused by the culprit product, or whether the harm was solely to the defective product itself." *Id.* at *4. Put another way, "courts do not simply determine whether or not the victim's injury was literally 'caused by a product,'" but rather, "courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action." *New Hope Pipe Liners, LLC v. Composites One, LCC*, No. 09-3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009).

8

"However, when the essential nature of the claim is not that of a [NJ]PLA claim, the plaintiff may maintain a separate cause of action." *Guardavacarro*, 2017 WL 3393812, at *4 (internal quotation marks omitted) (quoting *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 418 (D.N.J. 2016)).

Here, Plaintiff alleges that while shopping at the Store, "she reached for a single piece of metal pipe displayed on a shelf, and while doing so the pipe came apart into two pieces slicing and injuring [her] right hand and lower right arm in multiple places." (Compl. at 2, ¶ 2). Plaintiff further alleges that the pipe "was in a compromised and dangerous condition." (*Id.* at 4, ¶¶ 2 & 5). Thus, according to Plaintiff, a pipe "in a compromised and dangerous condition" came apart and injured her, which arguably sounds in product liability, and accordingly appears to be subsumed by the NJPLA. *See Universal Underwriters Ins. Grp.*, 103 F. Supp. 2d at 746 ("New Jersey courts interpreting the [NJPLA] have consistently held that, as a general rule, common law actions for negligence and breach of implied warranty are subsumed by the NJPLA when the claims asserted fall within the act's purview.").

As noted above, the NJPLA defines "harm" as including personal injuries and defines a "product liability action" as "any claim or action brought by a claimant for ***harm caused by a product, irrespective of the theory underlying the claim***, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(2) & (b)(3) (emphasis added). Plaintiff claims her injuries were caused by a product—a metal pipe—which seem to fall within the NJPLA's purview. Indeed, Plaintiff fails to sufficiently articulate how the NJPLA does not subsume her alleged claims for negligence and willful-and-wanton conduct. For example, she does not explain how the "essential nature" of her claim falls outside the scope of the NJPLA. *See Guardavacarro*, 2017 WL 3393812, at *4. While Plaintiff argues that her "claims are not directed toward any malfunction of the pipe" and that she was "not using the pipe for its intended purpose

9

when she was injured," she does not cite to any supporting case law or other legal authority showing that a malfunction of the product and/or using the product for its intended purpose is required for, or even relevant to, a NJPLA claim. (*See* Opp. Br. at 2). Instead, Plaintiff attempts to frame her personal injury claim as one for negligence and/or willful-and-wanton conduct (rather than a claim under the NJPLA) by alleging in a conclusory fashion that Defendant negligently "assembled, displayed and/or offered for sale the pipe at issue, causing same to injure [her]." (Compl. at 2, ¶ 8; *see also id.* at 3, ¶ 2 & 4, ¶ 2). But, as discussed in more detail in Section III.B below, the Complaint does not contain any supporting facts to show how Defendant was allegedly negligent or how Defendant's purported negligence, as opposed to the defective or compromised pipe itself, caused Plaintiff's injuries.

Therefore, to the extent Plaintiff's claims in her Complaint are based on the metal pipe being defective or otherwise compromised, those claims are subsumed by the NJPLA, and Plaintiff's Complaint fails to state a claim under the NJPLA. "To plead a prima facie cause of action under any type of NJPLA claim, Plaintiff must adequately allege, *inter alia*, 'that the product was defective.'" *Eisenbrey v. Wal-Mart Stores E., LP*, No. 24-6299, 2024 WL 4712833, at *3 (D.N.J. Nov. 7, 2024) (quoting *Durkin v. Paccar, Inc.*, No. 10-2013, 2010 WL 4117110, at *6 (D.N.J. Oct. 19, 2010)). "There are three types of claims under the NJPLA: (1) design defect; (2) manufacturing defect; and (3) warnings defect." *Id.* (citing *Stick v. Smith & Nephew, Inc.*, No. 20-13811, 2021 WL 1997411, at *3 (D.N.J. May 19, 2021)). "The 'only difference' among the types of claims is 'the nature of the alleged defect.'" *Id.* (citing *Stick*, 2021 WL 1997411, at *3). "Under any theory, however, '[t]he mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect.'" *Id.* (alteration in original) (quoting *Vicente v. Johnson & Johnson*, No. 20-1584, 2020 WL 7586907, at *11 (D.N.J. Dec. 21,

2020)).  Here, the Complaint does not allege any design defect, manufacturing defect, or warnings defect with respect to the metal pipe, and the fact that Plaintiff was allegedly injured as a result of the pipe is not sufficient to show that a defect existed.  Accordingly, to the extent Plaintiff's claims are subsumed under the NJPLA, Defendant's Motion is **GRANTED** because Plaintiff's Complaint fails to state a claim under (and indeed does not even mention) the NJPLA.

### B. Plaintiff's Common Law Negligence & Willful-and-Wanton Claims

The Court next addresses the sufficiency of the Complaint's allegations with respect to Plaintiff's common law negligence and willful and wanton claims, to the extent those claims are not wholly subsumed by the NJPLA.

"To prevail on a claim of negligence a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages."  *Betancourt v. Home Depot U.S.A., Inc.*, No. 16-7255, 2018 WL 3954854, at *3 (D.N.J. Aug. 16, 2018) (quoting *Fernandes v. DAR Dev. Corp.*, 119 A.3d 878, 885–86 (N.J. 2015)).  "Under the ordinary standard of care, one must 'take reasonable precautions to prevent the occurrence of foreseeable harms to others.'"  *Id.* (quoting *Weinberg v. Dinger*, 524 A.2d 366, 374 (N.J. 1987)).  "However, '[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation.'"  *Id.* (alteration in original) (quoting *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003)).  "This requires that business owners 'discover and eliminate dangerous conditions, . . . maintain the premises in safe conditions, and . . . avoid creating conditions that would render the premises unsafe.'"  *Id.* (alterations in original).

"Willful and wanton misconduct and reckless misconduct, on the other hand, require something more than negligence to be alleged."  *Melone v. Cryoport Inc.*, No. 23-3243, 2024 WL

11

1743108, at *7 (D.N.J. Apr. 23, 2024). "As such, unlike with gross negligence, the same facts that support a finding of ordinary negligence do not necessarily support a finding of willful and wanton or reckless misconduct." *Id.* "To be clear, reckless and willful conduct are degrees of civil culpability greater than gross negligence." *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 755 (N.J. 2016). "Reckless conduct is 'the conscious disregard . . . to a known or obvious risk of harm to another' whereas '[w]illful misconduct implies an intentional deviation from a clear duty' owed to another." *Id.* (alterations in original) (citation omitted). "In sum, negligence, gross negligence, recklessness, and willful conduct fall on a spectrum[.]" *Id.*

Here, to the extent Plaintiff's claims are based on Defendant's alleged failure to properly assemble, offer for sale, and/or display the metal pipe, the Complaint fails to state a claim for negligence or willful-and-wanton conduct under New Jersey law sufficient to meet the plausibility standard set forth in *Twombly* and *Iqbal*. For example, Plaintiff does not allege that Defendant owed her a duty of care, and if so, what duty of care, nor how Defendant purportedly breached that duty. Plaintiff also does not plausibly allege how Defendant's purported negligence caused her injuries. Further, the Complaint does not contain any allegations of "an intentional deviation from a clear duty owed to another" or other factual allegations supporting a claim for willful-and-wanton conduct. Rather, Plaintiff conclusorily alleges that Defendant knew about the pipe's "compromised and dangerous condition" and "negligently and carelessly owned, assembled, displayed and/or offered for sale the pipe at issue," which caused her to suffer injuries. (*See generally* Compl.). These conclusory statements lack supporting facts and are insufficient to plausibly state a claim for negligence and/or willful-and-wanton conduct sufficient to survive a motion to dismiss. Thus, to the extent not subsumed by the NJPLA, Plaintiff's common law

negligence and willful-and-wanton claims (whether based on a theory of *respondeat superior* or otherwise) are dismissed for failure to state a claim.

Plaintiff's argument regarding the mode-of-operation doctrine (*see* Opp. Br. at 3–4) does not save her bare-bones Complaint from dismissal. "The mode-of-operation rule applies when a plaintiff's injury arises from a business's decision to operate on a self-service model." *Garcia v. Walmart, Inc.*, No. 17-3118, 2021 WL 754006, at *2 (D.N.J. Feb. 26, 2021) (citing *Prioleau v. Ky. Fried Chicken, Inc.*, 122 A.3d 328, 337–38 (N.J. 2015)). "In effect, the mode-of-operation rule displaces the usual rule in negligence cases and shifts the burden of proof on actual or constructive notice to the defendant." *Id.* However, this rule only applies in "limited circumstances." *Teixeira v. Walmart Stores, Inc.*, No. 18-13103, 2021 WL 4272828, at *2 (D.N.J. Sept. 16, 2021) (quoting *Prioleau*, 122 A.3d at 330). "It is appropriate when 'as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents.'" *Id.* (quoting *Prioleau*, 122 A.3d at 337). "Most importantly, there must be 'a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred.'" *Id.* (quoting *Prioleau*, 122 A.3d at 338).

Here, Plaintiff argues Defendant "is liable for negligence and the other asserted causes of action under the 'mode of operation' doctrine." (Opp. Br. at 1). Plaintiff states "[t]he mode-of-operation rule applies to self-service settings in which customers independently handle merchandise without the assistance of employees and the injury may . . . have resulted from the dangerous condition caused by the manner in which employees assembled or otherwise presented the products at issue for self-service handling by invitees" and that "a nexus exists between the self-service aspect of [Defendant's] business and the injuries Plaintiff suffered, and she should

13

therefore be permitted to pursue her negligence claims against [Defendant]." (*Id.* at 3–4). Thus, Plaintiff contends she does not need to prove that Defendant had notice of the alleged dangerous condition involving the pipe because Defendant "was obligated to maintain the safety of their business consistent with the nature of its operation as 'a self-service store.'" (*Id.* at 3). Defendant argues that while Plaintiff "admits that there must be a nexus between the self-service aspect of" Defendant's business and her injuries, she does not point to any allegations in the Complaint that satisfy that required nexus. (Reply Br. at 3). Defendant thus submits that because the Complaint lacks factual allegations showing a nexus between the self-service aspect of its business and Plaintiff's injuries, "the mode of operation doctrine does not apply[,] and the Complaint should be dismissed." (*Id.*).

The Court agrees the Complaint does not contain any allegations regarding a nexus between the alleged self-service components of Defendant's business and a risk of injury in the area where Plaintiff's injuries occurred, and accordingly finds that Plaintiff has not established the mode of operation doctrine applies here. While Plaintiff alleges there was a "dangerous condition," she does not allege what that dangerous condition was or any details about the alleged dangerous condition. The Complaint likewise does not contain any allegations regarding how "a dangerous condition [was] likely to occur as the result of the nature of [Defendant's] business, the [Store] property's condition, or a demonstrable pattern of conduct or incidents." *See Teixeira*, 2021 WL 4272828, at *2 (quoting *Prioleau*, 122 A.3d at 337).

Therefore, Defendant's Motion (D.E. Nos. 6 & 7) is **GRANTED**, and Plaintiff's Complaint (D.E. No. 1-2) is **DISMISSED** *without prejudice*.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading by leave of court "when justice so requires," and leave to amend pleadings is to be freely given. Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant leave to amend rests within the discretion of the district court. *Foman*, 371 U.S. at 182.

Here, Plaintiff submits that to the extent the Court finds she failed to state a claim, she should be granted leave to amend her Complaint. (Opp. Br. at 4). Defendant states that, without waiving any defenses, it does not object to Plaintiff being granted leave to amend her Complaint. (Reply Br. at 1–2). Thus, the Court grants Plaintiff's unopposed request for leave to amend her Complaint to correct the deficiencies outlined above.

### IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Plaintiff's Complaint is **GRANTED**, and accordingly Plaintiff's Complaint is **DISMISSED** *without prejudice*. Plaintiff is granted leave to amend her Complaint within thirty (30) days of the date of this Opinion and the accompanying Order.

**Dated:** December 16, 2024        *s/ Esther Salas*
                                    **Esther Salas, U.S.D.J.**